1   **KAMBERLAW, LLC**
    Frederick J. Klorczyk III (SBN 320783)
2   305 Broadway, Suite 713
    New York, NY 10007
3   Tel: 646.964.9604
    Fax: 212.202.6364
4   Email: fklorczyk@kamberlaw.com

5   **KAMBERLAW, LLP**
    Deborah Kravitz (SBN 275661)
6   401 Center St., Suite 111
    Healdsburg, CA 95448
7   Tel: 707.820.4247
    Fax: 212.202.6364
8   Email: dkravitz@kamberlaw.com

9
    *Attorneys for Plaintiff and*
10  *the Proposed Class*

11

12              **IN THE UNITED STATES DISTRICT COURT**
                **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
13

14  **ELIZABETH M. COSIN,**              **CASE NO. 3:25-cv-5085**
    **individually, and on behalf of others**
15  **similarly situated,**

16              **Plaintiff,**           **CLASS ACTION COMPLAINT**

17      **vs.**                          **DEMAND FOR JURY TRIAL**

18

19  **JOHNSON HEALTH TECH**
    **RETAIL, INC.,**
20
                **Defendant.**
21

22          Plaintiff, Elizabeth M. Cosin ("Plaintiff"), individually and on behalf of all others

23  similarly situated, brings this action against Defendant, Johnson Health Tech Retail, Inc.

24  ("Defendant"). Plaintiff's allegations as to Plaintiff's own actions are based on personal

25  knowledge. The other allegations are based on counsel's investigation, and information

26  and belief.

27                          **INTRODUCTION**

28      1.      This case concerns a deceptively dangerous product and its manufacturer's

    **SECOND AMENDED CLASS ACTION COMPLAINT CASE NO. 3:24-CV-1337-GPC-KSC**

inadequate recall efforts.

2.    Approximately 3.8 million units of BowFlex branded Model 552, 52.5 LB Adjustable Dumbbells and Model 1090, 90 LB Adjustable Dumbbells (the "Products") were sold from as early as 2004 through May 2025 for between $200 and $800.

3.    Prior to April 23, 2024, the Products were sold by Nautilus, Inc. (a.k.a. BowFlex, Inc.) (hereinafter, "Nautilus/BowFlex" or the "Predecessor"). However, in March 2024, Nautilus/BowFlex filed for bankruptcy protection. On March 4, 2024, Nautilus/BowFlex and Defendant Johnson Health Tech Retail, Inc. entered into an asset purchase agreement for Defendant to acquire Predecessor's assets. On April 23, 2024, Defendant began selling the Products.

4.    On June 5, 2025, Defendant and the U.S. Consumer Product Safety Commission ("CPSC") announced the recall of roughly 3.8 million BowFlex branded Model 552, 52.5 LB Adjustable Dumbbells and Model 1090, 90 LB Adjustable Dumbbells.[1] Consumers were warned to "immediately stop using the recalled Bowflex adjustable dumbbells" because the Products' "weight plates can dislodge from the handle during use, posing an impact hazard." *Id.* Defendant stated that it had received "12 reports of the plates dislodging during use with no injuries for units it sold. [Nautilus/BowFlex] received 337 reports of the plates dislodging during use for units it sold, including 111 resulting in injuries such as concussions, abrasions, broken toes or contusions." *Id.* The potential for the Products' weight plates to dislodge from the handle during use is referred to herein as the "Defect."

5.    Under the terms of Defendant's recall claim procedure, only customers who purchased the Products from April 23, 2024, through May 2025 are entitled to receive either a full refund of the purchase price (in the form of a voucher) or replacement dumbbells.

---

[1] https://www.cpsc.gov/Recalls/2025/Johnson-Health-Tech-Trading-Recalls-BowFlex-Adjustable-Dumbbells-Due-to-Impact-Hazard-Including-3-7-Million-Sold-by-Nautilus-Inc (last visited June 13, 2025).

**CLASS ACTION COMPLAINT**

6.     Customers who purchased the Products prior to April 23, 2024, are not being offered replacement dumbbells or full refund voucher.  Instead, Defendant has arbitrarily limited those customers – who account for approximately 3.7 million (*i.e.*, 96%) of the affected Products – to the wholly inadequate option of requesting a prorated voucher and a one-year membership to Defendant's JRNY digital fitness app.

7.     Customers have reported that these prorated vouchers vary in amounts from $20 to $95.[2]  A new set of 552 dumbbells retails for $429 and a new set of 1090 dumbbells retails for $799.[3]  The prorated vouchers are effectively worthless because customers will be forced to shell out hundreds of dollars to replace their defective and unsafe Products with comparable dumbbells.

8.     Plaintiff and Class members have suffered economic injury based on their purchase of the Products, which they would not have bought had they known the truth.

9.     Plaintiff is filing this class action lawsuit to seek all available relief to consumers, to raise awareness that Defendant's Products are a hazard, and to "encourage companies to take greater care in avoiding the production [and sale] of hazardous products in the first place."  *Kaupelis v. Harbor Freight Tools USA, Inc.*, 2019 WL 6998661 at *10 (C.D. Cal. Oct. 9, 2019) (*quoting In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1115-16 (C.D. Cal. 2008)).

## **PARTIES**

10.     Plaintiff Elizabeth Cosin is a Healdsburg, California citizen who purchased the Products in this judicial district.  On December 5, 2020, Plaintiff purchased a BowFlex 552 Dumbbell kit online from bowflex.com for $379.54.  The serial numbers for Plaintiff's Model 552 Dumbbells are 002-6841SFE20476298 and 002-

---

[2] https://www.reddit.com/r/Bowflex/comments/1l45sqi/552_recall_refund_amount/ (last visited June 13, 2025).

[3] https://www.bowflex.com/product/552-results-series-adjustable-dumbbells/ZMK4011008.html & https://www.bowflex.com/product/1090-results-series-adjustable-dumbbells/ZMK4011009.html (last visited June 13, 2025).

6841SFE20476017.  On June 5, 2025, Plaintiff received a Safety Recall Notice from Defendant via email advising her of the voluntary recall for the Products.  Defendant offered Plaintiff a $60 prorated voucher towards the purchase of replacement dumbbells from their website.

11.    Plaintiff's claim is typical of all Class members in this regard.

12.    Before purchasing the Product, Plaintiff reviewed the Product details, descriptions, specifications and features on bowflex.com.  The Product was marketed as an "adjustable dumbbell" that is designed to "replace 15 sets of weights with 1" by using "selection dials [that] easily take you from one exercise to the next."  Plaintiff understood this to mean that the Product was a safe, reliable, and durable alternative to conventional dumbbells.  None of Defendant's materials disclosed the Defect.  If the Product's labeling, packaging, web content, or user manual had disclosed the Defect, then Plaintiff would not have purchased the Product, or would not have purchased the Product on the same terms.

13.    Defendant Johnson Health Tech Trading, Inc. is a Wisconsin corporation with its principal place of business located at 1600 Landmark Drive, Cottage Grove, Wisconsin, and is a citizen of Wisconsin.

## JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is citizen of a state different from Defendant.

15.    This Court has personal jurisdiction over Defendant because a substantial portion of the events that gave rise to Plaintiff's claims occurred in California.  This Court also has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of California, contracts to supply goods within the State of California, and supplies goods within the State of California.

**CLASS ACTION COMPLAINT**

16.    Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(b)(2) because Plaintiff resides in this District and a substantial portion of the events that gave rise to Plaintiff's claims occurred in this District.  *See also* Declaration of Elizabeth Cosin Regarding Venue Pursuant to Cal. Civ. Code § 1780(d), attached as Ex. A.

**FACTUAL ALLEGATIONS**

17.    **Product at Issue:**  The BowFlex branded Model 552 and Model 1090 SelectTech Adjustable Dumbbells at issue in this case were sold at "Johnson Fitness & Wellness, DICK'S Sporting Goods and Best Buy stores nationwide and online at www.Bowflex.com and www.Amazon.com as early as 2004 through April 2024 by [Nautilus/BowFlex], and from May 2024 through May 2025 by Johnson Health Tech Trading Inc. for between $200 and $800."[4]  There were approximately 3,844,200 units sold during this period in the United States.  "The dumbbells were sold in pairs and single units in the color black and include handles, weight plates and a molded plastic tray.  The model 552 dumbbells adjust from 5 to 52.5 pounds and the model 1090 adjusts from 10 to 90 pounds using manual adjustment knobs while the weights are nested in the base.  The model and serial number are printed on a sticker located on the bottom of the molded plastic tray."  *Id.*

18.    According to the CSPC, the serial numbers for the affected Products fall within the following ranges:

[4] https://www.cpsc.gov/Recalls/2025/Johnson-Health-Tech-Trading-Recalls-BowFlex-Adjustable-Dumbbells-Due-to-Impact-Hazard-Including-3-7-Million-Sold-by-Nautilus-Inc

| Model | Serial Number Range |
|---|---|
| BowFlex 552 Adjustable Dumbbells | 00182M243902233–00182M243902592<br>00182MAG220200463C–00182MAG221204535C<br>00182SFE213414844C–00182SFE234002231C<br>100182M242800001–100182M250201440<br>100182MAG20431227C–100182MAG233500372<br>100182P244100067–100182P244602976<br>100182SFE213709609–100182SFE235206276<br>100748M243200001–100748M244300252<br>100748MAG222400734–100748MAG23500660<br>100748P242900001–100748P245205632<br>100748SFE220908785–100748SFE233513811<br>X00748MAG233003670–X00748MAG233003672<br>X00748SFE233202493–X00748SFE233203161<br>Z00748MAG233003670 |
| BowFlex 1090 Adjustable Dumbbells | 4551MAG21452813–4551MAG23350381<br>4551SFE23320001–4551SFE23501949 |

19.    The following are photos of the Products:



BowFlex Model 552 52.5lb Adjustable Dumbbell

**CLASS ACTION COMPLAINT**



BowFlex Model 1090 90lb Adjustable Dumbbell

20.    **Defect at Issue:**  According to the CSPC:  "The weight plates can dislodge from the handle during use, posing an impact hazard."

21.    Defendant "has received 12 reports of the plates dislodging during use with no injuries for units it sold.  [Nautilus/BowFlex] received 337 reports of the plates dislodging during use for units it sold, including 111 resulting in injuries such as concussions, abrasions, broken toes or contusions."

22.    The Defect affects all of the Products at issue.  Defendant and the CSPC have stated that "[c]onsumers should immediately stop using the recalled Bowflex adjustable dumbbells."

23.    The cause of the Defect is the same for all of the Products at issue.

24.    **Relevant Time Period:**  All of the omissions and misrepresentations at issue were uniformly and consistently made at all times while the Products were sold between 2004 through May 2025.  Notwithstanding the Nautilus/BowFlex bankruptcy and subsequent asset purchase by Defendant in March 2024, there were no material changes to the Products themselves, to the marketing and branding of the Products, or to other consumer-facing materials during the relevant period.

25.    **The Omission and Misrepresentations:**  Defendant represented the Products as "adjustable dumbbells" that are designed to "replace 15 sets of weights with

**CLASS ACTION COMPLAINT**

1" by using "selection dials [that] easily take you from one exercise to the next." Reasonable consumers understood this to mean that the Products were safe, reliable, and durable alternatives to conventional dumbbells and would not drop weight plates or risk dropping weight plates during normal use.

26.    Indeed, since 2006, the Owner's Manual and Workout Guide for the Model 1090 Dumbbells stated: "This innovative dumbbell is a versatile training tool that will help you reach your fitness goal. This product has been carefully engineered and manufactured to provide a wide array of weight options starting at 10 lbs (4.5 kg) and going all the way up to 90 lbs (40.8 kg)."[5]  The Owner's Manuals further described the Products as featuring "an exclusive locking mechanism designed to ensure proper and complete selection of the weight plates as well as to ensure weight plate retention during the workout." As the Products' User Manuals explain, the "locking mechanism serves two important purposes:  1. The mechanism will prevent deselecting (dropping) weight plates from the dumbbell when it is NOT in the dumbbell base.  2. The mechanism will prevent partial selection of the weight plates in which the plates are not fully supported and the locking pin is not fully engaged" (collectively, the "Representations").

27.    However, these Representations were false and misleading, including because the Products were not safe, reliable, and durable. Despite Defendants' express

---

[5] *See* SelectTech® BD1090 Dumbbells Owner's Manual and Workout Guide (Copyrighted 2006), https://parts.bowflex.com/resource.php?url=http://productload.johnsonfit.com/inc/uploaded_media/0d56858b643fe2fc097e09164f9a96a7/owners_guide/451b2005c38c74b6ebf3214fe636d6e4.pdf (last visited June 13, 2025).  Similarly, since 2008, the Owner's Manual and Workout Guide for the Model 552 Dumbbell stated:  "This innovative dumbbell is a versatile training tool that will help you reach your fitness goal. This product has been carefully engineered and manufactured to provide a wide array of weight options starting at 5 lbs (2.27 kg) and going all the way up to 52.5 lbs. (23.9kg)." *See* SelectTech® BD552 Dumbbells Owner's Manual and Workout Guide (Copyrighted 2008), https://parts.bowflex.com/resource.php?url=http://productload.johnsonfit.com/inc/uploaded_media/269126e6aa494c43d59d38284c4386f6/owners_guide/2ac709843477dffdd63ec2c3ef90dbf3.pdf (last visited June 13, 2025).

**CLASS ACTION COMPLAINT**

representation that the Products were designed "to ensure weight plate retention," the Products nonetheless drop weight plates or risk dropping weight plates during workouts due to the Defect.  Defendant failed to disclose that the "weight plates can dislodge from the handle during use, posing an impact hazard" (the "Omission").  There is no warning of any kind of the Defect anywhere on the Products' labels, on the websites where the Products were sold, on the Products themselves, or in the Owners' Manuals.

28.    The omission and misrepresentations pertain to an unreasonable safety hazard that reasonable consumers consider to be material.

29.    Plaintiffs and class members would not have bought the Products, or would not have bought them on the same terms, if the Defect had been disclosed. The materiality of the Defect also is demonstrated by the existence of the recall.

30.    Defendant did not disclose the Defect on the product packaging or labeling or in any other customer-facing document or display. Retailers' sales personnel and customer service representatives also did not disclose the Defect.

31.    At the time of purchase, Plaintiff and class members did not know and did not have reason to know that the Products were defective. Defendant, and its predecessor, had exclusive knowledge of that fact.

32.    Defendant made partial representations to Plaintiff and class members, while suppressing the safety Defect.  Specifically, Defendant marketed the Products as safe, reliable, and durable, while knowing that those representations were not true and failing to disclose the Defect.

33.    **Defendant's Knowledge of the Defect:**

34.    Defendant was aware of the Defect at the time of its purchase of its Predecessor's assets.

35.    Before the products were first launched, Defendant and its Predecessor knew about the defect as a result of pre-release testing.

36.    After launch, Defendant and its Predecessor monitored a variety of sources of information to detect signs of defects. These sources of information include warranty

claim data, customer complaints to Defendant and its Predecessor, replacement part data, field reports, and CPSC correspondence. Defendant and its Predecessor knew that for every complaint made, there is a statistical likelihood that there were many more unreported incidents, and Defendant and its Predecessor made projections about the likely manifestation rate and future warranty claims based on the number of known complaints.

37.    Defendant and its Predecessor also monitored and would have known about consumer complaints to the CPSC. When a consumer posts a complaint on the CPSC website, all of the relevant information provided to the CPSC is automatically sent via email to the manufacturer and retailers. Monitoring complaints to the CPSC is standard industry practice that serves as an early warning mechanism to spot defects that cause safety hazards, and Defendant and its Predecessor adhered to that practice.

38.    There have been numerous complaints regarding the Products improperly dropping weight plates that have been reported to the CSPC since at least 2011. On March 14, 2011, a consumer submitted the following complaint to the CSPC regarding their Model 1090 dumbbells:[6]

> When consumer dials in the weights on the weight lifting set, they do not lock on to the dumbbell so when it is lifted up, the dumbbell plates often fall off. Consumer had one fall onto his foot as he lifted the dumbbell from the stand. The plates fall off sometimes when he is working out with them.

39.    Prior to Defendant's purchase of its Predecessor's assets, Defendant had the opportunity to access and inspect all records pertaining to its Predecessor's business. Section 6.6 provided:[7]

> Prior to the Closing, Sellers shall permit representatives of

---

[6] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1170739 (last visited June 13, 2025).

[7]*See* March 4, 2024 Asset Purchase Agreement, https://www.sec.gov/ix?doc=/Archives/edgar/data/0001078207/000162828024008736/bfx-20240304.htm (last visited June 13, 2025).

**CLASS ACTION COMPLAINT**

Purchaser to have reasonable access during regular business hours and upon reasonable notice, and in a manner so as not to interfere with the normal business operations of Sellers, to all premises, property, books, records (including Tax records), Contracts, and documents of or pertaining to the Business (provided that any representatives of Purchaser shall be subject to the confidentiality obligations under the Confidentiality Agreement or otherwise agree in writing to be bound by the terms of such Confidentiality Agreement applicable to Purchaser thereunder) and Acquired Assets. If requested, Purchaser shall be permitted to conduct a physical inspection of Inventory within 10 business days of the Closing.

40.    Defendant acknowledged that it conducted an independent inspection and investigation in Section 8.1 of the asset purchase agreement, which provided:

PURCHASER ACKNOWLEDGES THAT PURCHASER HAS CONDUCTED AN INDEPENDENT INSPECTION AND INVESTIGATION OF THE PHYSICAL CONDITION OF ALL ACQUIRED ASSETS AND ALL SUCH OTHER MATTERS RELATING TO OR AFFECTING THE ACQUIRED ASSETS AS PURCHASER DEEMS NECESSARY OR APPROPRIATE AND THAT IN PROCEEDING WITH ITS ACQUISITION OF THE ACQUIRED ASSETS, EXCEPT FOR ANY REPRESENTATIONS AND WARRANTIES EXPRESSLY SET FORTH IN SECTION IV, PURCHASER IS DOING SO BASED SOLELY UPON SUCH INDEPENDENT INSPECTIONS AND INVESTIGATIONS. ACCORDINGLY, PURCHASER WILL ACCEPT THE ACQUIRED ASSETS AT THE CLOSING "AS IS," "WHERE IS," AND "WITH ALL FAULTS."

41.    Defendant nonetheless proceeded with purchasing its Predecessor's assets despite knowledge of the Defect.  Defendant then waited until there were at least 349 complaints of the weight plates dislodging during use, "including 111 resulting in injuries such as concussions, abrasions, broken toes or contusions," before issuing the Recall.

42.    **No Adequate Remedy at Law:**

43.    Plaintiff and members of the putative class are entitled to equitable relief because no adequate remedy at law exists.

44.    Legal remedies are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.

**CLASS ACTION COMPLAINT**

45.    Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages.  Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages.

46.    Damages and restitution are not the same amount.  Unlike damages, restitution is not limited to the amount of money Defendant wrongfully acquired plus the legal rate of interest.  Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize.  Plaintiff seeks non-restitutionary disgorgement of profits in connection with their unjust enrichment claims.

47.    Legal claims for damages are not equally certain as restitution because equitable claims entail few elements.

48.    Nor does Defendant's June 5, 2025, recall is unfair and inadequate as it improperly distinguishes between purchasers who purchased the Products before April 23, 2024, and those who purchased after.  For customers, like Plaintiff, who purchased the Products prior to April 23, 2024, Defendant is refusing to offer replacement dumbbells or full refund voucher.  Instead, Defendant has arbitrarily limited those customers to the wholly inadequate option of requesting a prorated voucher (that reportedly ranges from $20 to $95) and providing a one-year membership to Defendant's JRNY digital fitness app.  Customers have reported that these prorated vouchers vary in amounts from $20 to $95, and replacement dumbbells cost between $429 and $799.  These prorated vouchers are effectively worthless since customers will be forced to shell out hundreds of dollars to replace their defective and unsafe Products with comparable dumbbells.

49.    Furthermore, Plaintiff and members of the putative class have no recourse against Nautilus/BowFlex – the company responsible for the Products prior to April 24, 2024 – because Nautilus/BowFlex went bankrupt in March 2024 and is no longer in existence.

**CLASS ACTION COMPLAINT**

50.    In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

51.    **The Recall Does Not Render This Lawsuit Moot:**

52.    The recall does not render this lawsuit moot because it does not provide all of the same relief available in this lawsuit.

53.    Under the recall, Defendant is only providing a "refund of the purchase price in the form of a voucher, or a replacement" for the Products to consumers who purchased the Products from April 23, 2024, through May 2025.

54.    Plaintiff and members of the putative class are consumers who purchased the products prior to April 23, 2024.  For these consumers, Defendant is not offering to replace their Products or refund the full purchase price.  Instead, these consumers are only "eligible to receive a prorated refund voucher to be put toward the purchase of products available on BowFlex.com and a one-year complimentary subscription to [Defendant's] JRNY Fitness App."

55.    Defendant is not providing appropriate refunds or replacements to any Class members.  Instead, it is only offering prorated refunds that amount to a fraction of the price for replacement dumbbells.  These options are not sufficient for Plaintiff and members of the Class for numerous reasons, including because the remedy offered to Plaintiff and Class members: (i) unfairly and arbitrarily distinguishes between purchasers of the Products who are harmed in an identical way; (ii) does not account for the time period when they were not permitted to use the Products due to the Defect; and (iii) offers no solution for purchasers who no longer trust the reliability of Defendant's products and do not wish to continue to do business with them, or those that do not feel safe or capable of fixing and properly maintaining the Product themselves with the threat of potential death or serious injury if they were to not properly fix or maintain the Products.

56.    In Plaintiff's case, she was informed that she was entitled to a prorated voucher totaling $60 for her Model 552 Dumbbells that originally cost her $379.54.

Stated otherwise, Defendant has offered Plaintiff a prorated voucher equivalent to 15.8% of the price she paid for her dumbbells – which are no longer usable.

57.    The CLRA provides that "in no case shall the total award of damages in a class action be less than one thousand dollars ($1,000)." Cal. Civ. Code § 1780(a)(1). That is far greater than what is provided by the Recall, which for Plaintiff and the putative class, is a fraction of the price paid for their Products.

58.    The recall was only briefly publicized and in a very limited manner. Therefore, many eligible class members who purchased from retail store remain unaware of it, and the response rate has been low.   The amount and reach of the publicity concerning the notice of recall was not comparable to the typical notice provided in a class action.

59.    **Predecessor's Bankruptcy Does Not Bar Recovery From Defendant:**

60.    On Defendant's "Dumbbell Recall Information" website, Defendant attempts to justify why consumers like Plaintiff and members of the putative class are not being offered replacement dumbbells or vouchers equal to the purchase price they actually paid.  As Defendant explains:[8]

> Customers who purchased a BowFlex 552 or 1090 dumbbell prior to April 23, 2024 from Nautilus, Inc. (a.k.a. BowFlex Inc.) are being offered a prorated voucher rather than a replacement or full refund voucher.  Here's what we are doing and why we are doing it:
>
> - The original company that sold the product prior to April 23, 2024, Nautilus, Inc., went bankrupt. That company no longer exists.
>
> - That bankrupt company, Nautilus, designed, manufactured, and sold these dumbbell sets prior to filing for bankruptcy in 2024. We were not involved in any aspect of the products Nautilus made and sold prior to April 23, 2024.
>
> - Our company acquired some of that bankrupt company's assets last April through the bankruptcy process—but we did not buy the

---

[8] https://www.bowflex.com/dumbbell-recalls.html (last visited June 13, 2025).

company or its liabilities. We did not assume any responsibility for past sales or issues with the products Nautilus made and sold.

- We did not make any money from 552 and 1090 dumbbells sold by Nautilus before it went out of business. Simply put: we had no involvement with the design, manufacture, or sale of these dumbbells prior to April 23, 2024.

- We are stepping up to provide the pro-rated voucher to U.S. consumers who bought recalled dumbbells from a bankrupt company, even though we have no obligation to do so. Offering this voucher is a good-faith gesture from our company to help U.S. consumers replace the product—even if they bought recalled dumbbells from Nautilus several years ago. Making this extra effort fully aligns with our company's commitment to helping our customers lead healthy lives.

- We encourage all customers to participate in this recall to obtain the remedy we are proactively making available through this voluntary recall.

We are doing our best to support the affected customers of bankrupt Nautilus, Inc. in a meaningful way.

61.     As a result of Nautilus/BowFlex's bankruptcy and subsequent asset sale to Defendant, Plaintiff and the putative class have no recourse against Nautilus/BowFlex, the original manufacturer of the Products.

62.     Following Defendant's acquisition of Nautilus/BowFlex's assets, Defendant reaped the benefits of its Predecessor's goodwill and reputation in the industry.  Indeed, from April 23, 2024, through May 2025, Defendant continued to manufacture and sell the Products in the same manner that its Predecessor did. Specifically, Defendant continued using:

- the same dumbbell designs for the Products;
- the same branding and marketing materials for the Products;
- the same user manuals for the Products;[9]

---

[9] *See* n.4 & 5, *supra*.

**CLASS ACTION COMPLAINT**

- the same website (www.bowflex.com); and

- the same phone numbers (1-800-618-8853 & 1-800-605-3369).

63.    When Defendant took over and continued to operate its predecessor's established dumbbell business on April 24, 2024, it became an integral part of the overall producing and marketing enterprise for the Products.  Fairness thus requires Defendant to assume responsibility for and bear the cost of the defective Products as that is a burden that was necessarily attached to Defendant enjoying its Predecessor's goodwill in the continued operation of the business.

## CLASS ALLEGATIONS

64.    ***Class Definition*:**  Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself, on behalf of all others similarly situated, and as a member of the Class defined as follows:

> All citizens of California who purchased Defendant's Products before April 23, 2024, in the State of California (the "Class").

65.    Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has a controlling interest; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (iv) all persons presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (v) any judicial officer presiding over this matter and their staff, and persons within the third degree of consanguinity to such judicial officer.

66.    Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

67.    This action is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23 for the reasons set forth below.

**CLASS ACTION COMPLAINT**

68.    ***Numerosity***:  Members of the Class are so numerous that their individual joinder herein is impracticable.  On information and belief, the Class includes thousands of consumers.  The precise number of Class Members and their identities is unknown to Plaintiff at this time but may be determined through discovery.  Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant, its retailers, their agents, or other means.

69.    ***Commonality and Predominance***:  Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members.  Common legal and factual questions include, but are not limited to:

(a)    Whether Defendant knew or should have known of the Defect at issue in this case, and if so, when it discovered the Defect;

(b)    Whether knowledge of the Defect at issue in this case would be important to a reasonable person, because, among other things, it poses an unreasonable safety hazard;

(c)    Whether Defendant failed to disclose and concealed the existence of the Defect from potential customers; and

(d)    Whether Defendant's conduct, as alleged herein, violates the consumer protection laws asserted here.

70.    ***Typicality***:  Plaintiff's claims are typical of the claims of the Class in that Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's failure to inform Plaintiff and all others similarly situated that the products at issue here can be dangerous.

71.    ***Adequacy***:  Plaintiff will fairly and adequately protect the interests of Class members.  Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class.  Plaintiff has no interests that are antagonistic to those of the Class.  Plaintiff has no past or present financial, employment, familial, or other relationship with any of the attorneys in this case that would create a conflict of interest with the proposed class

**CLASS ACTION COMPLAINT**

members.

72.    ***Superiority*:** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for members of the Class; the Class is readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

73.    Without a class action, Defendant will continue a course of action that will result in further damages to the Plaintiff and Members of the Class and will likely retain the benefits of its wrongdoing.

## CAUSES OF ACTION

### COUNT I
### Violations of California's Unfair Competition Law ("UCL")
### (Cal. Bus. & Prof. Code §§ 17200 *et seq.*)

74.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

75.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

76.    Defendant's conduct constitutes an unfair business act and practice pursuant to California Business & Professions Code §§ 17200, *et seq*. (the "UCL"). The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

77.    Plaintiff brings this claim seeking restitution or disgorgement of the amounts Defendant acquired through the unfair, unlawful, and fraudulent business practices, as described herein; and injunctive relief to stop Defendant's misconduct, as described herein.

**CLASS ACTION COMPLAINT**

78.    Defendant's knowing conduct, as alleged herein, constitutes a "fraudulent" and/or "unfair" business practice, as set forth in California Business & Professions Code §§ 17200-17208.

### Defendant's Conduct Constitutes a Fraudulent Business Practice

79.    Defendant's conduct constitutes a fraudulent business practice because, as set forth herein, consumers are likely to be deceived by Defendant's Omission and Representations.

80.    Defendant was and is aware that its Omission and Representations are material to consumers.

81.    Defendant was and is aware that its Omission and Representations are misleading, as described herein.

82.    Defendant had an improper motive—to derive financial gain at the expense of accuracy or truthfulness—in its practices related to the labeling and advertising of the Products.

83.    There were reasonable alternatives available to Defendant to further Defendant's legitimate business interests, other than the conduct described herein.

### Defendant's Conduct Constitutes an Unfair Business Practice

84.    Defendant's conduct violates both the "Immoral Test" and the "Balancing Test" under California law, which are used to analyze whether conduct is "unfair".

85.    Defendant's conduct violates the Immoral Test because Defendant intentionally makes the Representations to increase sales of the Products.

86.    Defendant was and is aware that its Omission and Representations are misleading, as described herein.

87.    Defendant's conduct is substantially injurious because consumers purchase the misrepresented Products in reliance on Defendant's Omission and Representations.

88.    Defendant's conduct also violates the "Balancing Test" because the utility of Defendant's conduct in labeling the Products with the Omission and Representations is outweighed by the harm to consumers.

**CLASS ACTION COMPLAINT**

89.    As set forth herein, the Omission and Representations are optional, voluntary advertising statements.

90.    Defendant makes the Omission and Representations to increase sales of the Products and to the detriment of consumers, who are misled and deceived.

91.    Consumers are directly harmed by Defendant's conduct in that they would not have purchased the Products if they had known the truth.

92.    Defendant's conduct is also substantially injurious because it prevents consumers from making informed purchasing decisions.

93.    In addition, Defendant's conduct is injurious to competition because Defendant's misrepresentation of its Products prevents consumers from making an informed choice between its Products and other similar products, which are not misrepresented.

94.    Defendant had an improper motive—to derive financial gain at the expense of accuracy or truthfulness—in its practices related to the labeling and advertising of the Products.

95.    There were reasonable alternatives available to Defendant to further Defendant's legitimate business interests, other than the conduct described herein.

96.    Plaintiff and members of the Class could not have reasonably avoided injury. Defendant's uniform Omission and Representations regarding the Products were likely to deceive, and Defendant knew or should have known that its Omission and Representations were misleading.

97.    Plaintiff purchased the Products with the reasonable belief that the Products were safe and not defective, and without knowledge that the Products suffered from the Defect.

### *Defendant's Conduct Constitutes an Unlawful Business Act*

98.    Defendant's misrepresentation of material facts, as set forth herein, also constitute an "unlawful" practice because they violate California Civil Code §§ 1572, 1573, 1709, 1710, 1711, and 1770 and the laws and regulations cited herein, as well as

the common law.[10]

99.    Defendant's conduct in making the Representations described herein, in the absence of any disclosure about the Defect, constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to its competitors.

100.    This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair business practice under California Business & Professions Code §§ 17200-17208.

101.    Plaintiff and members of the Class have been directly and proximately injured by Defendant's conduct in ways including, but not limited to, the monies paid to Defendant for the Products, interest lost, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiff and Class members.

102.    As a result of the business acts and practices described above, Plaintiff and members of the Class are entitled to such Orders and judgments that may be necessary to disgorge Defendant's ill-gotten gains and to restore to any person in interest any money paid for the Products as a result of the wrongful conduct of Defendant.

103.    Pursuant to Civil Code § 3287(a), Plaintiff and the Class are further entitled to pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum

---

[10] The California Civil Code Sections prohibit the following conduct: (i) § 1572: actual fraud, including by suggestion of an untrue fact or suppression of that which is true; (ii) § 1573: constructive fraud, including by breach of duty "by misleading another to his prejudice" and in any act or omission that the law declares to be fraudulent; (iii) §§ 1709-1711: willfully deceiving another or a particular class of persons "with intent to induce him to alter his position to his injury or risk", including by suggestion of a fact that is not true or suppression of a fact by one who is bound to disclose it, or by giving information "of other facts which are likely to mislead for want of communication of that fact"; (iv) § 1770: listing proscribed practices, including unfair methods of competition and unfair or deceptive acts and practices, as described herein.

**CLASS ACTION COMPLAINT**

certain and capable of calculation, and Plaintiff and the Class are entitled to interest in an amount according to proof.

104.    With respect to restitution under the UCL claim, Plaintiff alleges in the alternative that Plaintiff and Class Members lack an adequate remedy at law for the reasons already alleged above.

## COUNT II
### Violation of California's False Advertising Law ("FAL")
### (Cal. Bus. & Prof. Code §§ 17500, *et seq.*)

105.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

106.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

107.    California Business & Professions Code § 17500 prohibits "unfair, deceptive, untrue or misleading advertising . . .."

108.    Defendant violated § 17500 by making the Representations and failing to disclose that the Products suffered from the Defect; and by representing that the Products possess characteristics and value that they do not have.

109.    Defendant's deceptive practices were designed to induce reasonable consumers like Plaintiff to purchase the Products.

110.    Defendant's uniform Representations were likely to deceive, and Defendant knew or should have known that they were misleading.

111.    Plaintiff purchased the Products in reliance on the Product Representations, and without knowledge of Defendant's Omission that the Products were defective.

112.    Plaintiff and members of the Class have been directly and proximately injured by Defendant's conduct in ways including, but not limited to, the price paid to Defendant for the Products, interest lost, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiff and Class members.

113.    The above acts of Defendant were and are likely to deceive reasonable

consumers in violation of § 17500.

114.   In making the Omission and Representations alleged herein, Defendant knew or should have known that the Omission and Representations were deceptive and/or misleading, and acted in violation of § 17500.

115.   As a direct and proximate result of Defendant's unlawful conduct in violation of § 17500 Plaintiff and members of the Class request an Order requiring Defendant to disgorge its ill-gotten gains and/or award full restitution of all monies wrongfully acquired by Defendant by means of such acts of false advertising, as well as interests and attorneys' fees.

116.   With respect to restitution under the FAL claim, Plaintiff alleges in the alternative that Plaintiff and Class Members lack an adequate remedy at law for the reasons already alleged above.

## COUNT III
### Violation of California's Consumer Legal Remedies Act ("CLRA")
### (Cal. Civ. Code § 1750, *et seq.*)

117.   Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

118.   Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

119.   Plaintiff brings this action pursuant to California's CLRA, Cal. Civ. Code § 1750, *et seq*.

120.   The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

121.   The Products are "goods," as defined by the CLRA in California Civil Code §1761(a).

122.   Defendant is a "person," as defined by the CLRA in California Civil Code §1761(c).

123.   Plaintiff and members of the Class are "consumers," as defined by the

23

**CLASS ACTION COMPLAINT**

CLRA in California Civil Code §1761(d).

124. Purchase of the Products by Plaintiff and members of the Class are "transactions," as defined by the CLRA in California Civil Code §1761(e).

125. Defendant violated Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which [they] do not have" by making the Representations and Omission, as described herein.

126. Defendant also violated section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . if they are of another" by making the Representations and Omission, as described herein.

127. In addition, Defendant violated section 1770(a)(9) by advertising the Products "with intent not to sell them as advertised" in that the Products are misrepresented and misbranded as described herein.

128. Defendant's uniform Representations and Omission regarding the Products were likely to deceive, and Defendant knew or should have known that its Representations were deceptive and/or misleading.

129. Plaintiff and members of the Class relied on Defendant's unlawful conduct and could not have reasonably avoided injury.

130. Plaintiff and members of the Class were unaware of the existence of facts that Defendant suppressed and failed to disclose, including that the Products suffered from the Defect.

131. Plaintiff and members of the Class would not have purchased the Products had they known the truth about the Defect in the Products.

132. Plaintiff and members of the Class have been directly and proximately injured by Defendant's conduct.

133. Such injury includes, but is not limited to, the purchase price of the Products and/or the price of the Products at which they were offered.

134. Moreover, Defendant's conduct is malicious, fraudulent, and/or wanton in that Defendant intentionally misled and withheld material information from consumers,

including to increase the sale of the Products.

135.  Pursuant to California Civil Code § 1782(a), on June 16, 2025, Plaintiff on her own behalf, and on behalf of members of the Class, provided notice to Defendant of the alleged violations of the Consumer Legal Remedies Act by notice letter setting forth Plaintiff's claims.

136.  As a direct and proximate result of Defendant's unlawful conduct in violation of the CLRA, Plaintiff and members of the Class request an Order pursuant to § 1780 enjoining such future wrongful conduct on the part of Defendant.

137.  Plaintiff seeks all relief available under this cause of action, other than monetary damages.  Plaintiff may amend the Complaint in the future to add a damages claim.

138.  With respect to restitution under the CLRA claim, Plaintiff alleges in the alternative that Plaintiff and Class Members lack an adequate remedy at law for the reasons already alleged above.

## COUNT IV
### Unjust Enrichment

139.  Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

140.  Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

141.  To the extent required, Plaintiff asserts this cause of action in the alternative to legal claims, as permitted by Rule 8.

142.  Plaintiff and the Class Members conferred a benefit on Defendant in the form of the gross revenues Defendant derived from the money Plaintiff and Class Members paid for the Products.

143.  Defendant knew of the benefit conferred on it by Plaintiff and the Class Members.

144.  Defendant has been unjustly enriched in retaining the revenues derived

**CLASS ACTION COMPLAINT**

from Plaintiff's and the Class Members' purchases of the Products, which retention of such revenues under these circumstances is unjust and inequitable because Defendant omitted that the Products were dangerous due to the Defect. This caused injuries to Plaintiff and class members because they would not have purchased the Products or would have paid less for them if the true facts concerning the Products had been known.

145. Defendant accepted and retained the benefit in the amount of the gross revenues it derived from sales of the Products.

146. Defendant has profited by retaining the benefit under circumstances which would make it unjust for Defendant to retain the benefit.

147. Plaintiff and the Class Members are, therefore, entitled to restitution in the form of the revenues derived from Defendant's sale of the Products.

148. As a direct and proximate result of Defendant's actions, Plaintiff and Class Members have suffered in an amount to be proven at trial.

149. Plaintiff and putative Class Members have suffered an injury in fact and have lost money as a result of Defendant's unjust conduct.

150. Plaintiff and putative Class Members lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

## <u>COUNT V</u>
### Fraud by Omission / Intentional Misrepresentation

151. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

152. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

153. This claim is based on a fraudulent omissions that the Products suffered from the Defect and misrepresentations concerning the safety, reliability, and durability of the Products. As discussed above, Defendant failed to disclose that the Products had a dangerous Defect, while advertising that the Products were safe, reliable, and durable.

**CLASS ACTION COMPLAINT**

154.    The false and misleading omissions and misrepresentations were made with knowledge of their falsehood. Defendant is a nationwide manufacturer and distributor, routinely undergoes product testing, and must have known about the Defect prior to sale. Nonetheless, Defendant continued to sell its defective Products to unsuspecting consumers.

155.    The false and misleading omission and misrepresentations were made by Defendant, upon which Plaintiffs and Class Members reasonably and justifiably relied, and were intended to induce and actually induced Plaintiffs and Class Members to purchase the Products.

156.    The fraudulent actions of Defendant caused damage to Plaintiffs and Class Members, who are entitled to damages and punitive damages.

157.    Plaintiffs seek all relief available under this cause of action.

## **PRAYER**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendant as follows:

A.    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as representative of the Class; and naming Plaintiff's attorneys as Class Counsel to represent the Class;

B.    For an order declaring that Defendant's conduct violates the statutes and laws referenced herein;

C.    For an order awarding, as appropriate, compensatory, statutory, and monetary damages to Plaintiff and the Class;

D.    For an order awarding injunctive relief;

E.    For an order awarding attorneys' fees and costs;

F.    For an order awarding pre-and post-judgment interest; and

G.    For such other and further relief as the Court deems just and proper.

**CLASS ACTION COMPLAINT**

## <u>JURY DEMAND</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated:  June 16, 2025                    Respectfully submitted,

/s/ *Frederick J. Klorczyk III*
Frederick J. Klorczyk III (SBN 320783)
KAMBERLAW, LLC
305 Broadway, Suite 713
New York, NY 10007
Tel: 646.964.9604
Fax: 212.202.6364
Email: fklorczyk@kamberlaw.com

KAMBERLAW, LLP
Deborah Kravitz (SBN 275661)
401 Center St., Suite 111
Healdsburg, CA 95448
Tel: 707.820.4247
Fax: 212.202.6364
Email: drkravitz@kamberlaw.com

*Attorneys for Plaintiff and*
*the Proposed Class*

**CLASS ACTION COMPLAINT**